UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTINE D. IMPSON (HUNTER),   ) | |
| )| |
|     Plaintiff,   ) | |
| ) | |
| vs.   ) | Cause No.  1:15-cv-1926-WTL-MJD |
| ) | |
| NANCY A. BERRYHILL, Acting   ) | |
| Commissioner of Social Security,[1]   ) | |
| ) | |
|     Defendant.   ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Kristine D. Hunter, née Impson, ("Hunter") requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Hunter's application for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act").  The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I.    PROCEDURAL HISTORY

Hunter protectively filed for DIB on April 3, 2012, alleging she became disabled on September 1, 2011.  She filed for SSI on April 4, 2012.  Hunter's application was denied initially on August 20, 2012, and again upon reconsideration on December 10, 2012.  Following the denial upon reconsideration, Hunter requested and received a hearing before an Administrative Law Judge ("ALJ").  The hearing, during which Hunter was represented by counsel, was held on

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

June 6, 2014, before ALJ Angelita Hamilton by video conference. The ALJ issued her decision on August 8, 2014, denying Hunter's claims. Hunter requested review by the Appeals Council, and on October 16, 2015, the Appeals Council denied review of the ALJ's decision. Thereafter, Hunter filed this timely appeal.

## II.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment (*i.e.*, one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to SSI sections only, with the exception of DIB section cites where they provide information beyond that found in the SSI sections.

month duration requirement; if so, the claimant is deemed disabled, 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

### III.     ALJ HAMILTON'S DECISION

ALJ Hamilton determined at step one that Hunter had not engaged in substantial gainful activity since September 1, 2011, the alleged disability onset date. Record at 17. At step two, the ALJ concluded that Hunter had the severe impairments endocarditis, chronic obstructive pulmonary disease ("COPD"), arthritis, and Hepatitis C, *id.* at 17, as well as the non-severe impairments of fibromyalgia, anxiety, depression, ADHD, and DAA opioid abuse in remission,

*id.* at 20.[3]  At step three, the ALJ determined that Hunter's impairments or combination of impairments did not meet or equal any Listing. *Id.* at 21. At step four, the ALJ determined that Hunter had the following residual functional capacity ("RFC"):

> [T]he claimant has the [RFC] to perform light work . . . . The claimant can occasionally climb ladders/ropes/scaffolds; frequently climb ramps/stairs. The claimant can frequently balance, stoop and kneel. She can occasionally crouch and crawl. She would have occasional exposure to extreme temperatures, exposure to wetness/humidity and exposure to environmental irritants such as fumes, odors, dusts and gases. The claimant could have frequent exposure to raw chemicals or solutions, moving machinery and unprotected heights.

R. at 22.

The ALJ determined that Hunter was unable to perform past relevant work, but would be capable of performing light work that exists in significant numbers in the national economy. R. at 23-24.  Accordingly, the ALJ concluded that Hunter was not disabled as defined by the Act.

## IV.  EVIDENCE OF RECORD

The ALJ's decision in combination with Hunter's brief (Dkt. No. 16) aptly set forth the medical evidence of record, which need not be recited here. Specific facts are introduced in the discussion section below where relevant.

## V.  DISCUSSION

In her brief in support of her Complaint, Hunter argues that the ALJ (1) erred in step two of her analysis by finding that Hunter's severe impairments were limited to her endocarditis, COPD, arthritis, and Hepatitis C and did not include fibromyalgia, severe anxiety, major depressive disorder, post-traumatic stress disorder, and chronic neck/lower back pain; (2) erroneously gave great weight in step four of her analysis to the non-examining state agency

---

[3]  Although the ALJ discussed record evidence referring to Hunter's back and neck pain, post-traumatic stress disorder, and borderline personality disorder, the ALJ did not definitively state that these impairments were non-severe. *See,* R. at 18-19.

4

physicians and did not specify what weight she gave to Hunter's treating physicians' opinions; and (3) erred in evaluating Hunter's statements concerning the severity, intensity, persistence, and limiting effect of her symptoms as not entirely credible.

### A.     Step Two

Hunter argues that the ALJ erred when she did not find Hunter's fibromyalgia, anxiety, major depressive disorder, post-traumatic stress disorder, and chronic neck/lower back impairments severe. In her decision, the ALJ described record evidence discussing each of these impairments. *See*, R. at 18-21. She concluded that Hunter's fibromyalgia, anxiety, and depression were non-severe impairments. R. at 20. She did not, however, articulate whether Hunter's PTSD or neck and lower back pain were non-severe.

"The Step 2 determination is 'a *de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities," *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). The Seventh Circuit has categorized errors in determining an impairment's severity as harmless as long as the ALJ otherwise finds one severe impairment, continues through the steps in the evaluation process, and "consider[s] all of [the claimant]'s severe and non-severe impairments, the objective medical evidence, [the claimant's] symptoms, and her credibility when determining her RFC immediately after step 3." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015); *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment. Here the ALJ categorized two

5

impairments as severe, and so any error of omission [at Step 2 regarding the severity of other impairments] was harmless.") (emphasis in original) (citations omitted).

The Court need not determine whether the ALJ erred in not determining whether Hunter's fibromyalgia, anxiety, major depressive disorder, post-traumatic stress disorder, and chronic neck/lower back impairments were severe. Here, the ALJ concluded that Hunter had four severe impairments - endocarditis, COPD, arthritis, and Hepatitis C. At that point, the ALJ crossed step two's threshold and continued the evaluation process. If the ALJ erred in determining that Hunter's other impairments were not severe, such error will be deemed harmless if the ALJ considered those impairments, along with all of Hunter's other severe and non-severe impairments, in making an RFC determination.

Although the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and lists "depression, MRSA, fibromyalgia, COPD, arthritis, mental issues, and back pain" in her RFC discussion, she failed to discuss the combined effects of Hunter's physical and mental impairments. *See* R. at 22-23. "[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing 20 C.F.R. § 404.1523); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("[T]he ALJ needed to consider the *aggregate* effect of this entire constellation of ailments-including those impairments that in isolation are not severe.") (emphasis in original). Because that did not happen in this case, remand is required to allow the ALJ to consider the combined effects of all of Hunter's impairments, both severe and non-severe, in determining her RFC.

### B. Physicians' Opinions

Hunter also argues that the ALJ failed to articulate what weight she gave to Hunter's treating physicians' opinions and erroneously gave great weight to the non-examining state agency physicians. The ALJ described medical records from Hunter's treating physicians, but, as Hunter correctly notes, was silent as to what weight she afforded their opinions.

The Seventh Circuit describes what is commonly referred to as "the treating physician rule" as follows:

> A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record. If this opinion is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it. But once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.

*Bates v. Colvin*, 736 F.3d 1093, 1099-100 (7th Cir. 2013) (internal quotation marks and citations omitted). "'If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.'" *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2))); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("[T]he ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to their opinions.").

Here, there is no indication whether the ALJ afforded controlling weight or some lesser weight to Hunter's treating physicians' opinions. Because the Court cannot tell what weight the ALJ gave to Hunter's treating physicians' opinions, on remand the ALJ should explicitly state

what weight she applies to their opinions, examine the factors in 20 C.F.R. § 404.1527(c), if she gives them less than controlling weight, and minimally articulate reasons to support her ultimate conclusions regarding the weight given to each of the treating and non-treating physicians' opinions.

    **C.**    **Statements Concerning Severity, Intensity, Persistence and Limiting Effect**

Hunter asserts that the ALJ erred in her finding that Hunter's statements concerning the severity, intensity, persistence and limited effect of her symptoms were not entirely credible. On remand, the ALJ should also evaluate all of Hunter's symptoms in accordance with the requirements in Social Security Ruling 16-3p.

    **VI.**    **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 3/8/17

    _William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification